## Brashears v. Combs.

(Decided February 27, 1917.)

### Appeal from Perry Circuit Court.

1. Jury—Impaneling For Trial—Tender of Jury Panel—Error—Appeal and Error.—Under section 2247 of the Kentucky Statutes, it is reversible error for the court, in the trial of a civil cause, to tender the parties a panel of eighteen jurors, more than three of whom are bystanders, the question having been properly raised by objection and exception in the trial court.

2. Venue—Change of Venue.—The question of granting a change of venue is addressed to the sound discretion of the court; and a refusal of an application for a change of venue will not be disturbed on appeal unless it appears that there has been an abuse of discretion.

3. Venue—Change of Venue—Evidence.—Evidence reviewed and held not to warrant a holding that the trial court abused its discretion in refusing a change of venue.

4. Contracts—Promise to Pay When Able.—A promise to pay a preexisting debt, from which the promisor had been discharged in bankruptcy, when able, if accepted, is enforceable, upon proof that the promisor has sufficient assets, after payment of his other debts, to satisfy such claim.

5. Pleading—Agreement.—An allegation that the defendant "promised and agreed to and with the plaintiff" is a sufficient allegation of acceptance of the promise, as acceptance is necessary before there could be an agreement.

6. Contracts—Acceptance—Evidence.—Evidence showing repeated efforts of plaintiff to enforce. the promise held sufficient to establish an acceptance by him.

7. Pleading—Amendments.—Plaintiff sued to recover on the implied promise of defendant to reimburse him for sums paid in discharge of seven replevin bonds on which he was defendant's surety, to which defendant plead his discharge in bankruptcy. Plaintiff thereupon filed an amended petition setting up a promise to pay said sums, made after the discharge, and, upon motion to elect, elected to stand upon the promise alleged in the amended petition. Held, that, upon demurrer, in determining the sufficiency of the amended petition, the allegations of the. original as well as the amended petition should be. considered, the amended petition stating expressly that it is amendatory and supplemental to the original petition.

8. Pleading—Inconsistent Pleadings—Objection to.—Motion to elect, rather than demurrer, is the proper way in which to raise an objection to inconsistent pleadings.

9. Fraud—Relief.—A simple mistake as to the legal effect of a promise is not such a mistake of law as warrants equitable relief either affirmative or defensive.

S. M. WILSON and WILLIS W. REEVES for appellant.

HOGG & JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

1. The judgment in this case will have to. be reversed because the appellant, defendant below, was not tendered a panel of eighteen jurors in accordance with section 2247 of the Kentucky Statutes, there being more than three bystanders in the panel tendered, and defendant having objected and excepted thereto. See L. & N. R. R. Co. v. King, 161 Ky. 324; L. & N. R. R. Co. v. Owens, 164 Ky. 557; L. & N. R. R. Co. v. Patrick, 167 Ky. 118; Imperial Jellico Coal Co. v. Bryant, 168 Ky. 385; Winchester v. Watson, 169 Ky. 213.

Of the many other questions presented upon this appeal, in view of the fact that another trial will be necessary, we shall consider the following: first, the defendant's motion for a change of venue; second, defendant's demurrer to the amended petition, and his motion to require the plaintiff to elect which cause of action

therein set out he would prosecute; third, plaintiff's demurrer to the tenth and eleventh paragraphs of defendant's amended answer; fourth, defendant's motion for a peremptory instruction; fifth, defendant's objection to the instruction given, and to the refusal of the court to give offered instructions.

2. Upon application for a change of venue the defendant introduced sixteen witnesses, all of whom were representative citizens of the county, acquainted with both plaintiff and defendant for many years, and twelve of them testified that they knew of no reason why the defendant could not obtain a fair and impartial jury in Perry county, in the ordinary way, to try his case and to give him a fair trial. Of the other witnesses introduced by defendant, James Pratt, his brother-in-law, John C. Wood and Ben C. Wood testified that by reason of his having been adjudged a bankrupt and discharged from his obligations, he could not get a fair trial, if the jury was selected from that part of the county where defendant lives, but that they did not know of conditions in other parts of the county. The remaining witness, Dr. G. W. Campbell, testified that, in his judgment, there would be a disposition on the part of jurors selected from that county, to accept the testimony of the plaintiff, that the defendant, since the bankruptcy discharge, had given a new promise to pay his indebtedness, rather than the denial of this promise by the defendant. From the testimony of all these witnesses, it is shown that the plaintiff is a prominent, influential and popular citizen of the county, having been elected sheriff of the county for two terms, about twenty-five years ago, although he was the candidate of the minority party in the county, and that he is a member of one of the largest and most influential families in the county. Upon the other hand, it is shown that the defendant, although also of a large and influential family, is not so widely known, has not so many acquaintances as the plaintiff, and, by the testimony of some of the witnesses, that there has been some feeling engendered against him, among his acquaintances in the part of the county in which he lives, by reason of the fact that he has been, upon two occasions, discharged from his obligations in bankruptcy.

The rule of law applicable upon a motion for a change of venue has been stated many times by this

court, and is thoroughly established, as stated in the case of L. & N. R. R. Co. v. Nethery, 160 Ky. 369:

"The rule is that the question of granting an application for a change of venue is addressed to the sound discretion of the court; and a refusal of an application for a change of venue will not be disturbed on appeal unless it appears that there has been an abuse of discretion. Warden v. Madisonville, H. & E. R. Co., 125 Ky. 644, 101 S. W. 914, 31 R. 234."

We do not deem it necessary to review the many cases cited by appellant in which the rule, as above stated, is approved, because we think it is clear that he did not, even by his own evidence, show such a condition of public sentiment as would warrant us in saying that the trial court abused a sound judicial discretion in refusing to grant the application for a change of venue.

3. After defendant had plead his discharge in bankruptcy, in bar of the cause of action set up against him by the plaintiff in the original petition to recover on the implied promise to reimburse plaintiff for the sums he had paid in discharge of several replevin bonds which he had signed for defendant as surety, aggregating $2,157.72, the plaintiff filed an amended petition, alleging a new promise upon the part of the defendant, made after the discharge in bankruptcy, and before the filing of the amended petition, to pay this indebtedness. There were seven of these replevin bonds paid by plaintiff, and the alleged new promise to pay the amount of each bond is set up in a separate paragraph, but the promise with reference to each is the same; the allegations being, in substance, that, since the discharge in bankruptcy, and before the filing of the amended petition, defendant promised and agreed to and with the plaintiff, on divers occasions and on divers days, to pay said debt just as soon as he was able to do so; that the defendant, at the time the amended petition was filed, was, and is, able to pay said debt, being the owner, when the amended petition was filed, and at all times since, of real estate, and other property, of the value of more than $10,000.00 over and above all of his debts.

After the filing of the amended petition, plaintiff, being required to elect whether he would prosecute the cause of action set up in the original or the amended petition, elected to proceed upon the latter. Counsel for

the defendant now argues, that, having elected to prosecute the cause of action set up in the amended petition, which does not repeat the allegations of the original petition, but states the new promise as to each debt as an amendment to the original petition, plaintiff cannot rely upon the allegations of the original petition, for any purpose.

We cannot concur in this contention, because, although plaintiff elected to prosecute the cause of action set up in the amended petition, the cause of action he elected to prosecute was that set up in the amended petition as an amendment to the original petition, and, in determining the sufficiency of the amended petition, upon the demurrer, it is as an amendment to the original petition that it is considered; in other words, the cause of action which he elected to prosecute, is that set out in the petition as amended. The amended petition does not set up the new promise as a separate, distinct or independent cause of action from that referred to in the original petition, but expressly states that it is amendatory and supplemental to the original petition.

Counsel for defendant also argue that, as the new promise was conditional, to make it binding, the plaintiff must have accepted the promise upon the conditions made; and, as neither the petition nor amended petition states that the promise was so accepted by the plaintiff, a cause of action was not stated. It is, of course, true that plaintiff must have accepted the new promise, as made, to make it binding; and plaintiff stated in his amended petition, that the defendant "promised and agreed, to and with the plaintiff," to pay the debt as soon as he was able, which statement, it seems to us, sufficiently states that the plaintiff accepted the promise made; otherwise the defendant could not have agreed with the plaintiff about the promise. The necessity for acceptance is to show an agreement, and having alleged the agreement, it necessarily follows that there must have been an acceptance by the plaintiff.

Neither do we find any merit in the contention of counsel that, because plaintiff alleged that the new promise was made on divers occasions and on divers days, between the time of the discharge in bankruptcy and the filing of the amended petition, plaintiff should have been required to specify the exact dates of these several promises, and elect upon which he would stand.

Several promises, made upon different dates, to pay the same indebtedness are not inconsistent pleas and were but reiterations of the same promise, presenting no grounds for an election.

4. Defendant also complains of the action of the court in sustaining plaintiff's demurrer to the tenth and eleventh paragraphs of his amended answer. In the tenth paragraph, he plead that, if he had made any new promise to pay the several debts to plaintiff, the promises were procured by fraud, misrepresentation and covin, which defendant pleads in bar of a recovery thereon. By the eleventh paragraph, defendant pleads that, if any promises were made, as alleged by plaintiff, they were given under, and as a result of, a mistake of his legal rights.

As the defendant had, in the preceding paragraphs of his amended answer, denied each and every new promise alleged by plaintiff, it is apparent that the statements of the tenth and eleventh paragraphs, assuming that good defenses were pleaded, were inconsistent with this denial, which, under subsection 4 of section 113, Civil Code of Practice, is prohibited. Demurrer, however, was not the proper way in which to raise this objection to the pleading, which should have been done, as provided in the code, by a motion to elect. Considering now, whether or not, although inconsistent with the defense of *non est factum,* the paragraphs stated facts constituting a defense, the allegation, in paragraph ten, that the promises were induced by fraud, if true, would defeat a recovery thereon, and this paragraph was not demurrable; but paragraph eleven, which attempted to plead a mistake of law upon the part of defendant, does not, in our opinion, present a good defense, because it alleges that the defendant was under the impression that the discharge in bankruptcy was a complete bar to a recovery upon the original obligation, which is true, and not a mistake of law on his part, but that he did not understand that the new promise, when given, would be binding upon him; in other words, that he was mistaken as to the legal import and effect of the promise, which is not such a mistake of law as warrants equitable relief, either affirmative or defensive, as is fully set out in sections 842, 843 and 848 of Pomeroy's Equity Jurisprudence, third edition; the author saying, in section 843, in part:

"The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief. If there were no elements of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or of other inequitable conduct in the transaction, the party who knew, or had an opportunity to know, the contents of an agreement or other instrument cannot defeat its performance or obtain its cancellation or reformation because he mistook the legal meaning and effect of the whole or any of its provisions. Where the parties, with knowledge of the facts, and without any inequitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, then the above rule uniformly applies; equity will not allow a defense, or grant a reformation or rescission, although one of the parties—and as many cases hold, both of them—may have mistaken or misconceived its legal meaning, scope and effect."

5.   We do not think the court erred in refusing the peremptory instruction, as appellant testified, that, at the First National Bank in Hazard, upon an occasion, the date of which he cannot definitely fix, but within the time alleged in the amended petition, defendant promised him, that: "I am going to pay you every cent you have paid out for me; you shan't lose out on that.   You might think I was trying to beat you, but God knows I didn't. I have sold my stave timber to Judge Cooper, and I would pay you five or six hundred dollars now, but Arch Corbett is on a note here with me and Arch's folks wants him to get off the note, and if it wasn't for that I would pay you right now, but Cooper will be back in a few days and I'll pay you every cent of this money. You shan't lose a nickel, no way." Plaintiff states that about a week or month later, at the depot in Hazard, defendant said to him: "Mr. Cooper will be on this train, I think; he is going to pay me some more on my stave timber.   I will send you a check for six or seven hundred dollars just as quick as he gets it back.   I'll pay you every cent of it just as fast as I can get it;" that about a month later, at plaintiff's home in Hazard, defendant said to him: "I have got my mineral under contract to

Green Garrett, at Winchester; I didn't get enough money out of my staves to pay you, but when I get that I will pay you every cent I owe you, every nickel of it." James P. Combs, also, testified that defendant told him to tell plaintiff that he would pay him every cent he owed him, as soon as he was able, which promise, plaintiff states, the witness repeated to him; but the witness was not permitted to state whether or not he repeated the promise to plaintiff, as he should have been allowed to do, since, if his testimony of the conversation is true, defendant sent the message, by him, to the plaintiff, and he should have been allowed to state whether or not he delivered it, as corroborative of plaintiff's evidence of the promise.

The new promise alleged by plaintiff, is, that the defendant promised and agreed to and with him to pay the entire indebtedness as soon as he was able; and there must, of course, have been proof that this promise, as alleged, was made by defendant and accepted by the plaintiff. Promises made by the defendant to make certain payments upon the indebtedness, out of particular funds, if those funds proved to be sufficient for the purpose, after the payment of other obligations of the defendant, are not, in themselves, sufficient to support the promise alleged; but the new promise by the defendant, to pay the indebtedness when able, which is supported by proof of the fact that defendant was able to pay the indebtedness, out of either the stave or mineral money, or the other property he owned, was sufficient to carry the case to the jury. It is thoroughly established, that the moral and legal obligation supporting the original indebtedness is a sufficient consideration for the new promise, and, that it is enforceable upon the happening of the condition attached to the promise. See Egbert v. McMichael, 9 B. Mon. 44; Eckler v. Galbraith, 12 Bush 71; Tolle v. Smith's Exr., 98 Ky. 464; Student's Remington on Bankruptcy, section 132; Mandal v. Levy, 14 A. B. R. 549; Smith v. Stanchfield, 7 A. B. R. 498; 6 R. C. L. 669. While plaintiff does not state in so many words, that he accepted the new promise, the evidence of his continued effort to enforce it and to get the defendant to keep it, we think, sufficiently proved an acceptance.

6. The only instruction given by the court, to which defendant objected and excepted and now insists is erroneous, is as follows:

"The court instructs the jury that the cause of action of the plaintiff is barred by the defendant's discharge in bankruptcy, and they should find for the defendant, unless they believe from the evidence that the defendant promised and agreed to and with the plaintiff that he would pay to plaintiff said debt after the plaintiff had paid said indebtedness, and that said promise, if any there was, was made after the payment of said debt by the plaintiff and after defendant's discharge in bankruptcy, and before the filing of plaintiff's amended petition on March 19th, 1914, and in that event they should find for the plaintiff; but to revive the debt a promise must be explicit, direct, positive and unequivocal and must have been made to the plaintiff."

The objection urged against this instruction is, that it treats the several obligations set out in the separate paragraphs of the amended petition, as one debt; but this was proper, because all of the proof shows that the parties, in the conversations upon which plaintiff relies as constituting a new promise, so regarded and treated the indebtedness. There was either a promise to pay the whole indebtedness, or no promise to pay any part of it; the plaintiff was entitled to recover the whole sum, or none of it, and to have submitted to the jury, separately, the several items of the original indebtedness, would have been confusing and unwarranted upon the evidence. Although the indebtedness had originally consisted of several items, all the evidence shows that the parties considered the indebtedness as a whole at the times when the new promise is alleged to have been made. The instruction, in our judgment, admirably states the law of the case, and in terms is certainly as favorable to the defendant as the law and facts permitted, except it should have submitted the new promise, upon the condition alleged in the petition, that is, that the defendant would pay as soon as he was able, and, that he was proven to be able.

The four instructions offered by the defendant do not present any theory of the law applicable to the case. which is not incorporated in the instruction given, which states the whole law, with the one exception mentioned above, much more tersely and clearly than do the offered instructions.; and the court did not err in refusing to give these instructions.

For the reasons indicated, the judgment is reversed and cause remanded for a new trial consistent herewith.