## Chase et ux. v. Weinberg et al.

(Decided March 24, 1933.)

W. W. DOWNING, ROBT. BURKE and BURKE & LAWTON
for appellants.

LAWRENCE S. GRAUMAN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to March 6, 1928, appellants and defendants below, George Chase and wife, owned lot No. 65 in block 2 of E. G. Goddard's subdivision to the city of Louisville, a plat of which was recorded in the office of the county court clerk of Jefferson county. The lot is located in the converging point of Goddard and Castlewood avenues in the subdivision. The makers of the subdivision placed certain buildings restrictions upon the lots into which it was divided, consisting chiefly of: (1) That the building should be for residence purposes only; (2) none of them should cost less than $3,000; and (3) none should be located nearer the street it fronts than twenty-five feet. Besides the plat of the subdivision containing such restrictions, all deeds executed for lots contained notice of them, but in them the restrictions were not always set out in hæc verba, but only by reference to the plat, or to the deed that the vendor had obtained from his immediate vendor. In that way actual notice was furnished to each successive vendee of any lot in the subdivision. Defendants owned another lot in the subdivision upon which a residence had been erected within twelve feet of the street it fronted, thus violating restriction 3, supra, and they

had also erected a building, occupied for residence purposes, on the point of lot 65 formed by the junction of the two avenues referred to and which extended to the curb line of each of those avenues, and in the construction of which the same restriction was also violated. Some of the purchasers of other lots in the subdivision had also violated the same restriction in the erection of residences thereon by placing them all the way from twenty to twenty-five feet of the fronted street, but they were not numerous and it does not appear for what length of time they had been erected.

Some time before the date mentioned defendants, Chase and wife, moved from Louisville, Ky., to Evansville, Ind., and left the renting and collecting of rents from the tenants of their houses in the subdivision to one Carpenter, who in an earlier day had procured license to practice law, but never engaged in the practice. On the date mentioned (March 6, 1928) plaintiffs and appellees here, Phillip Weinberg and Herbert Weinberg, submitted to Carpenter a written proposition to buy the remaining portion of lot 65 at the price of $1,500 and stated to Carpenter at the time that they intended to erect an apartment building on the lot if they procured it, and were buying it exclusively for that purpose. They inquired about sewerage and other utility accommodations, and also about restrictions, and Carpenter wrote to defendants inquiring about such matters, but did not inclose to them the written proposal to purchase. Mrs. Chase only answered that letter, in which she stated that: "The lot you speak of has sewer, water, gas and telephone in it or near everything. Courthouse records show no restrictions other than for business; that was years ago. We have had no criticism on the building being twelve feet from curbing on our little house on Barret, our trouble being over on city property on Goddard."

The parties later came to an understanding that defendants would take $2,100 cash for the lot, and plaintiffs procured Mr. Lawrence Grauman, their regular attorney, to prepare a deed to be sent to defendants for their execution. Following the description of the land in that deed there was inserted this proviso: "Provided however, there is excepted from the foregoing warranty and covenants of title and this conveyance is made subject to restrictions and conditions affecting the

property herein conveyed as set out in deed recorded in Deed Book 60, Page 20, in the office aforesaid and in deed recorded in Deed Book 1166, page 409 in the office aforesaid.'' The deed was executed and returned to Carpenter for delivery and the collection of the purchase price. In the meantime Mr. Grauman had investigated the title and became fully aware of the restrictions referred to, and which information he imparted to plaintiffs. After receiving the executed deed, Carpenter went to the office of plaintiffs to deliver it, and the subject of the restrictions, as well as the purpose for which the lot was being purchased, were fully discussed during the meeting before the delivery of the deed by Carpenter to plaintiffs and their payment of the purchase price. Mr. Grauman was sent for and he came and the discussion continued, when finally he suggested that one of the plaintiffs and Carpenter should together inspect the property and the entire subdivision and report to him the extent of the violations of restriction No. 3, supra, so that he might determine therefrom whether it, because of the violations so reported to him, had been waived and abandoned by the parties entitled to insist upon its observance. After the two (one of the plaintiffs and Carpenter) made their report, Mr. Grauman concluded that under a line of opinions in this and other jurisdictions restriction No. 3 had become abandoned and was no longer binding upon the owner of any of the lots in the subdivision. That conclusion was consented to or acquiesced in by all present, including Carpenter, which it is clear was based upon the opinion of Mr. Grauman, who was the selected attorney of plaintiffs in the transaction. Thereupon the deed was delivered and the consideration paid.

Later, plaintiffs began excavating on the lot preparatory to the erection of an apartment house thereon, when a Mr. Bailey, and other lot owners in the subdivision, filed in the Jefferson circuit court an equity action against plaintiffs herein charging in their petition that defendants therein were about to construct their apartment house in violation of the restrictions referred to, and especially No. 3, supra, and prayed that they be enjoined from doing so. Thereupon Mr. Grauman, as attorney for plaintiffs herein, notified defendants and appellants of the pendency of that action and asked them to defend it, but which they declined to do.

The temporary injunction obtained in that action upon the filing of the petition was unmolested by four members of this court upon a motion made to dissolve it before Judge Dietzman, and upon final hearing in the trial court it was perpetuated and the case stricken from the docket. Whereupon plaintiffs filed this action against defendants in the same court seeking a rescission of the contract of conveyance and the collection from defendants of the consideration paid. They tendered a deed to defendants with their petition. After setting out, in substance, the facts as we have outlined them, and after making the necessary formal averments, the petition as amended sets out the grounds for the relief sought in this language:

"Plaintiffs state that at the time they paid the defendants the $2,100.00, in cash and received the deed on March 22, 1928, as set forth in the petition, they paid same under the mistaken supposition and belief that the restrictions and conditions as set forth in deed recorded in Deed Book 660, page 20, did not affect the lot which they were purchasing so as to prevent the erection of an apartment building or any building or improvements on said lot within 25 feet of the front line of said lot or within 25 feet of Goddard avenue or within 25 feet of Castlewood avenue, and that under the agreement under which said lot was purchased, the defendants were entitled to said $2,100.00 only on the conditions that said lot was free from restrictions which would prevent the erecting of an apartment building and that said $2,100.00 would not have been paid to the defendants by the plaintiffs and said deed accepted by the plaintiffs if it had been known to the plaintiffs that no building or improvements could be erected on said lot within 25 feet of the front line of said lot or within 25 feet of Goddard avenue or within 25 feet of Castlewood avenue.

"Plaintiffs state that both they and the defendants were of the belief that said lot could be improved by erecting an apartment building on same within 25 feet of the front line of said lot or within 25 feet of Goddard avenue or within 25 feet of Castlewood avenue, and labored under the erroneous misconception that the restrictions and conditions set forth in deed recorded in Deed Book, 660, page 20, did not affect the lot purchased by plaintiffs from the defendants so as to prevent the erecting of any building or improvements on

same within 25 feet of the front line of said lot or within 25 feet of Goddard avenue or within 25 feet of Castlewood avenue.

"Plaintiffs state that acting under the erroneous conviction of law and fact that the said conditions and restrictions as set forth in deed recorded in Deed Book 660, page 20, did not affect said lot so as to prevent the erecting of any improvements or buildings on same within 25 feet of the front line of said lot or within 25 feet of Goddard avenue or within 25 feet of Castlewood avenue, they paid the defendants said $2,100.00 and accepted said deed, but for said erroneous conviction, they would not have paid same and that they accepted said deed acting under the erroneous conviction that the words in same, to wit (proviso supra), did not have the legal effect of preventing the erection of any building or improvements on said lot within 25 feet of the front line of said lot or within 25 feet of Goddard avenue or within 25 feet of Castlewood avenue, but they believed, supposed and thought that the legal effect of same would permit them to erect an apartment building on said lot and that the legal effect of said provision is entirely different from what they supposed it was, as is set out above.

"Plaintiffs state that the contract between the plaintiffs and the defendants was intended and understood to be that said lot was not subject to any restrictions or conditions which would prevent the erection of an apartment building and that said deed was delivered by defendants to the plaintiffs and accepted by them and the $2,100.00 paid by the plaintiffs to the defendants under a mutual mistake, both the parties plaintiff and the parties defendant supposed that (same proviso) did not mean that no improvements could be erected on said lot within 25 feet of the front line of said lot or within 25 feet of Goddard avenue or within 25 feet of Castlewood avenue."

The trial court sustained the demurrer to the petition as originally drafted and filed an opinion holding, in effect, that the alleged mistake was not one for which legal relief was obtainable, but after elaboration by an amended petition containing the excerpt supra the court overruled a second demurrer filed to the petition as so amended. Following pleadings and motions made the

issues and upon submission, the court filed another opinion sustaining the prayer of the petition as amended and adjudged a rescission of the contract of conveyance with appropriate orders for the restoration of the consideration, and from that judgment defendants prosecute this appeal. .

The case has been elaborately briefed on both sides, so much so that we are convinced that but few cases, if any, dealing with the right of rescission upon the ground of mistake, rendered by this or any other court, have been overlooked. But, before taking up the question for determination, we deem it proper to say that much space in briefs is devoted to a discussion of the status and authority of the man Carpenter as the alleged agent of defendants in effecting the purchase and conveyance of the lot. Counsel for plaintiffs argue that he was an agent for all purposes relating to the transaction and that his knowledge of the facts and his conclusions thereon are obligatory on defendants as much so as if the latter themselves had been present and negotiated the trade in person. A contrary view is taken and argued by counsel for defendants, since it is their contention that Carpenter was at most only a special sales agent or broker for his clients with known limited authority in regard to the sale, and that his principals were and are not bound by anything that he may have said or consented to during the completing of the sales transaction. But, in the discussion and the determination of the decisive legal question (i. e., whether the specific mistake relied on is or not of the nature and character that the law will recognize as furnishing grounds for the relief sought), we have concluded to waive the question as to limitations upon the authority of Carpenter, if any, and to determine the case upon the theory that he possessed full and complete authority to represent defendants in all matters appertaining to the sale of the lot and to bind them as effectually as if they had in person negotiated the trade.

Another preliminary question is presented and which is: The nature and kind of mistake that the pleadings and the proof developed as a basis for the relief prayed for and granted by the trial court. It is attempted, in a way, to insist that the mistake relied on and upheld by the trial court was one of *fact,* or, if not exclusively so, then it is a mixed one of both fact and

law; but our conclusion is, from a critical analysis of the facts, that the alleged mistake is exclusively one of law, if indeed it is one at all. It will be observed that all parties to the transaction knew all the facts. They knew the location of the lot and its bordering streets. They also knew of the restrictions upon the use of the lot the purchase of which was under consideration, including restriction 3, supra, and they knew the precise extent to which that restriction had been violated by the various purchasers of lots in the subdivision since the time of its creation. They likewise knew that the very deed that had been prepared by plaintiffs' attorney and herein sought to be canceled contained those restrictions. The only thing they did not know was: What effect in law, as producing abandonment or waiver, would a court to which the question might be submitted, attribute to the specific violations of the restriction, all of which were completely known by all parties? So that, the exact question for determination is— whether or not a misinterpretation of the legal effect of all of the relevant facts by an employed attorney to give advice upon the subject (and which advice was accepted and acted upon) constitutes such a mistake of law as to be cognizable by the courts and for which relief will be granted?

Formerly, instances were rare, if any at all, when courts would relieve against a mistake of law and which enunciation, so followed for a long time, was upon the theory that every one was conclusively presumed to know the law. But courts began to take cognizance of the fact that such a presumption was a most violent one and in most instances was without foundation in fact, and the rule denying relief for such a mistake began to be relaxed. It was embodied, as long as it remained in such nonelastic condition, in the maxim, "Ignorantia juris non (or haud) excusat." But the word "jus," as embraced therein, was later construed as referring to a general law or the ordinary law of the country, rather than the law applicable to private rights, and as to the latter the courts have developed an inclination, under some circumstances and conditions, to relieve against a mistake regarding it. But an examination of the cases and text-writers leads to the inevitable conclusion that each case is more or less exclusively governed by its own facts. This court, following the inclination of all

others, has long since adopted the ruling which might be considered a departure from the ancient one, ·that where one parts with property or incurs obligations under the mistaken belief that he was under a legal obligation to do so when there was no law furnishing a foundation for such obligation, he may, generally speaking, be relieved against the mistake upon appropriate and timely application therefor.

Again, the one motivated by a mistake as to the law may have been induced or influenced to do so through the machinations of his designing adversary seeking to take advantage of him, or the mistake was a mixed one of both fact and law combining to produce unconscionable results under such circumstances as that the benefited party should not be rewarded therefor. There are no doubt other instances, too numerous to mention, where relief will be granted, illustrations of which are found in the numerous cases cited in briefs, but which we will not incorporate in this opinion. We have no war to make with any of such decisions, but our conclusion in this case is that the presented facts do not bring it within any of those classes. For instance, reliance is strongly made, both by counsel for plaintiffs and by the court in its last opinion, upon the recent cases of Bell v. Carroll, 212 Ky. 231, 278 S. W. 541, and Board of Regents v. Cole, 209 Ky. 761, 273 S. W. 508. In each of them the mistake for which relief was granted was clearly one more of fact than of law, and the attendant circumstances were such as to show beyond peradventure of doubt that none of the parties comprehended the true situation, and that the result, if relief was not granted, would be that which none of the parties intended. The present prevailing rule upon the subject in this jurisdiction was dealt with and stated in the very recent case of Johnson v. Baker, 246 Ky. 604, 55 S. W. (2d) 404, 406, and wherein we spoke concerning it: "The parties knew the facts which gave rise to the right of redemption, and were presumed to know the legal consequences of those facts. The general rule, subject to certain exceptions, is that a court of equity will not relieve against a mistake of law. 13 C. J. sec. 267, p. 379; 6 R. C. L. secs. 46, 47, pp. 627-629; Fisher v. May's Heirs, 2 Bibb, 448, 5 Am. Dec. 626; Brashears v. Combs, 174 Ky. 344, 192 S. W. 482; Reggio v. Warren, 207 Mass. 525, 93 N. E. 805, 32 L. R. A. (N. S.) 340,

20 Ann. Cas. 1244; Renard v. Clink, 91 Mich. 1, 51 N. W. 692, 30 Am. St. Rep. 458. None of the exceptions embraces a case of the character now presented. 6 R. C. L. sec. 48, p. 636; 13 C. J. sec. 268, p. 379. Cf. Ky. Title Co., etc., v. Langan, 144 Ky. 46, 137 S. W. 846.''

In that case the appellant became the assignee of an accepted bid made by appellee at a judicial sale of real estate. The judgment ordering it had prematurely stated that the purchaser would be entitled to immediate possession upon its confirmation, and which fact the assignee knew when she purchased the bid. It was for less than two-thirds of the appraised value of the property sold, and for which reason the owner was entitled to redeem it and to retain possession of the property until the year allowed for that purpose expired. The property was renting for about $1,100 per month and the assignee of the bid relied upon the recitation in the judgment of sale as giving her the right to immediate possession with the accompanying one of collecting the rent during the redemption period. So believing, she agreed to pay an indebtedness of the defendant in the judgment to her assignor, amounting to about $10,000 in addition to assuming the amount of the bid. Upon her failure to obtain possession she moved to set aside the confirmation of the sale upon the ground of a failure of consideration, growing out of her mistake in believing that under the law (and which had been so adjudged by the court in its order of sale) she would be entitled to collect the rents after confirmation. That motion was sustained and the sale was set aside. Later the assignor of the bid brought his action against her to recover the amount of his debt which she had agreed to pay as part consideration for his assignment of his bid to her. She defended on the ground of such failure of consideration based upon such mistake on her part; but both the trial court and this one held her not entitled to relief, and in doing so we employed the language supra. That case, to our minds, was and is a stronger one in favor of the one seeking relief upon the same ground than is the instant one.

A case more directly in point is that of Brashears v Combs, 174 Ky. 344, 192 S. W. 482, 485. In that case (which was a suit to recover a money judgment) the defendant pleaded, among his many defenses, that the debt sued on had been discharged in bankruptcy. The

reply to that plea was a new promise made after the bankruptcy adjudication, to which defendant responded by pleading his ignorance of the effect of his new promise and a "mistake of his legal rights," and but for which mistake he would not have made the promise. We disposed of that avoidance by quoting and adopting the rule as stated in Pomeroy's Equity Jurisprudence (3d Ed.) sec. 843, which says in part: "The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief." The text then proceeds with a discussion of what effect the elements of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or other inequitable conduct in the transaction, would have on the right of the mistaken party to relief; but none of which, as we interpret the instant transaction, appear in this case. See, also, the cases of Daniel Boone Coal Co. v. Crawford, 203 Ky. 666, 262 S. W. 1097; Weller v. Fidelity Trust & Safety Vault Co. (Ky.) 64 S. W. 843, 844, 24 Ky. Law Rep. 1136; and others referred to in those opinions. The question involved in the latter two cited cases, as well as their facts, make them very analogous to the conditions and circumstances of this one, and in each of which relief was denied.

Mr. Black, in his late work on Rescission and Cancellation, vol. 1, p. 447, sec. 149, in discussing "Mistake as to Legal Effect of Instrument," classifies the cases of mistake which under the modern rule relief is granted, and those wherein it will not be granted. After disposing of the first class, he then adds: "But on the other hand, if a written instrument is just what the parties intended it to be, and expresses the intention which they had in mind at the time, so that there is no mistake as to its purport, it cannot be rescinded, nor can other equitable relief be given against it, because of a mistake or misunderstanding of one or both of the parties concerning the legal consequences or effects of the writing. The instance, where the grantor in a deed of trust or settlement understands its purport and voluntarily executes it, without any fraud or undue influence, he cannot have it set aside because he did not fully understand its legal effect."

Applying that rule to the facts of this case, we find

that no one misunderstood any language in the deed sought to be canceled, nor was any one mistaken as to its legal effect. The only issue about which there was any doubt whatever arose out of the question of, whether or not restriction No. 3, supra, had been waived and abandoned, and the solution of that issue depended entirely upon the extent and kind of violations of it by owners of the various lots of the subdivision. All parties were fully aware of the facts upon which its solution depended. The situation involved the taking of a chance, and whether or not that would be done was left to the determination of selected counsel, learned in the law, to whom both parties correctly stated the relevant facts, and it was upon his judgment that they both relied and completed the transaction. By defendants not objecting to his selection it might not be inappropriate to say that each party made him their arbiter and agreed to abide by his conclusion. To now hold that one of them may, under such circumstances, disregard his contract would encourage a party to a doubtful venture, to disregard his deliberate purpose and intention to enter into the exact contract that he made, and, if the speculative chance, about which he was fully aware, should turn out against him, to then relieve himself of all burdens of his contract and take from the other party the benefits of his bargain.

But it is said that all parties knew the purpose for which plaintiffs were buying the lot, and when that purpose failed the inducement thereto was destroyed, and that it would be inequitable to compel them to retain the property when they could not employ it in carrying out that purpose. But that contention involves nothing more than a rehash of the arguments made in support of the alleged available mistake. Of course, if it were not for restriction No. 3, supra, there would be no obstacle in the way of plaintiffs devoting the lot to the original purpose contemplated, and all parties knew at the time that, unless that restriction could be avoided in the manner that the attorney concluded had been done, the purpose of plaintiffs in purchasing the lot could not be carried out.

Again, it is insisted that Carpenter by relying upon the advice of plaintiffs' counsel (as did they also) in some manner misrepresented either the law or some fact which ought to serve to bring this case within the

remedial jurisdiction of the court. But we find nothing in the record supporting any such conclusion. Carpenter knew no more about the restriction and its present status as to the legal effect of the facts, upon which the parties finally acted, than did plaintiffs. Consequently, we repeat that both contracting parties relied on plaintiffs' selected counsel, but the chance bargain that plaintiffs took subsequently proved disastrous. We have found no principle of equity entitling them to shift their loss upon their vendor who was guilty of no fraud, misrepresentation, concealment, undue influence, or other act to induce them to make the purchase.

Some illustrations will serve, as we think, to demonstrate the fallacy of plaintiffs' contention. If they are correct, and are entitled to the relief that they ask in this case, then any one purchasing property, the title to which was clouded and of which, and all the facts concerning which, he was aware, would likewise be entitled to relief if it should subsequently develop that he was mistaken in his judgment as to the legal effect of the facts; or one might purchase real property then occupied by a stranger to the deed, and the purchaser possessed knowledge of all the facts concerning such occupancy but determined that it was amicable and not adverse to the title of his vendor, and so believing he takes the chance and makes his purchase, but afterwards it is determined that the occupancy of the stranger was adverse to the title of the vendor and the deed obtained was worthless, either because it was champertous or because the occupant had acquired the title by adverse possession.

Again, one might purchase the interest of a devisee under a will believing that its language created an absolute title in the devisee (his vendor), but before doing so and to relieve his doubts he seeks and obtains the advice of learned counsel of his own choosing and makes the purchase, followed by eventual loss because of incorrect advice. If the contention of plaintiffs in the instant case is sustainable, then in each of the illustrated ones the disappointed obligee or contractor would be entitled to relief. But, surely the ancient rule denying relief for mistakes of law has not yet become sufficiently relaxed as to embrace such illustrative classes of cases, and other similar ones of common and universal occurrence. They, like the conveyance under con-

sideration, are but chance bargains entered into with full and complete knowledge of the facts but which later proved disastrous to the disappointed bargainor, and for which the law furnishes no remedy in the absence of some misleading or fraudulent conduct of the other contractor.

We therefore conclude that our sympathy for plaintiffs in their situation cannot be made effective under the circumstances by granting them relief therefrom. So concluding, the judgment is reversed, with directions to set it aside and to dismiss the petition and for other proceedings not inconsistent herewith.

Whole court sitting.