RENDERED: FEBRUARY 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0348-MR

DOUGLAS L. GORDON                                        APPELLANT

|  | APPEAL FROM WASHINGTON CIRCUIT COURT |
| v. | HONORABLE SAMUEL TODD SPALDING, JUDGE |
|  | ACTION NO. 23-CI-00025 |

RONALD WALDRIDGE                                       APPELLEE

## OPINION
### REVERSING AND REMANDING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND TAYLOR, JUDGES.

ECKERLE, JUDGE: Appellant, Douglas L. Gordon ("Gordon"), seeks review of

Findings of Fact, Conclusions of Law, and an Order of the Washington Circuit

Court on his claims against Appellee, Ronald Waldridge ("Waldridge"), for

recovery of amounts that he paid under an admittedly unenforceable contract. The

Trial Court scheduled a bench trial but then cancelled it. It took no proof, heard no

argument, and conducted no hearing, but accepted written, factual stipulations

from the parties. It then issued findings of fact and conclusions of law akin to what

would be done after a bench trial. But it did not address significant, controlling, legal issues involved and rendered an "equitable" ruling, attempting a middle ground. That effort, while well-intentioned, will ultimately prove unworkable and lead to more litigation. A deeper, underlying problem is that the novel and hybrid process does not allow meaningful appellate review of the issues presented. Hence, we reverse and remand for proper, additional proceedings, including dispositive motion practice, such as for summary judgment or judgment on the pleadings, on legal issues where no factual disputes are at issue; oral arguments; objections; hearings; or an actual trial including directed verdict practice and motions for judgment notwithstanding the verdict, and where conclusions of law are rendered according to controlling law.

Here, the Trial Court accepted the following factual stipulations from the parties:

> 1. Douglas Gordon and Ronald Waldridge, are both adult males residing in Washington County, Kentucky. with neither being under a disability,
>
> 2. On or about November 1, 2000, Mr. Gordon agreed to buy and Mr. Waldridge agreed to sell an undefined 1[-]acre parcel of land and the mobile home situated on said land which Mr. Waldridge had been renting to others.
>
> 3. The purchase price was $26,000.00. No down payment was made and no interest was charged. The Plaintiff paid the Defendant approximately $144.44 per

month for fifteen years. The final payment was made November 1, 2015[, totaling approximately $25,999.20].

4. As part of the oral agreement, Mr. Waldridge allowed Mr. Gordon to tap into his waterline and pay $30 per month rather than install his own water line.

5. In November of 2017, Mr. Gordon asked Mr. Waldridge for a deed to the property.

6. Mr. Waldridge attempted to get surveyor Reed Spaulding to survey the 1-acre tract.

7. Spaulding reported that it was unlikely the Planning Commission would approve the conveyance.

8. There were [*sic*] no further communication between Mr. Gordon and Mr. Waldridge from 2017 until February 27, 2023, when Mr. Gordon's lawyer contacted Mr. Waldridge requesting a deed to the property.

9. To assist Mr. Gordon in obtaining a deed, Mr. Waldridge gave Mr. Gordon a letter stating that Mr. Gordon had purchased the 1-acre of property and the 3-bedroom mobile home.

10. Mr. Waldridge's attorney applied to the Washington County Planning Commission for an exception to the requirement that the property front a public road or contain 15 acres.

11. The Planning Commission denied the request for an exception rendering the property non-transferable.

12. Neither Mr. Gordon or [*sic*] Mr. Waldridge were aware of the Planning Commission's rules at the time the oral agreement was reached.

13. Over the 23 years of occupancy by Mr. Gordon, the mobile home has deteriorated.

14. Mr. Gordon and his spouse have resided in the mobile home on the property since November 1, 2000, and have made no payments to Mr. Waldridge since November 1, 2015.

15. Each party waives the right to a trial by jury.

Findings of Fact, Conclusions of Law and Order. February 19, 2024. Record on Appeal ("ROA") at 54-56.

Gordon filed this action on March 23, 2023. Initially, Gordon's complaint requested specific performance of the oral contract, including delivery of a deed to the real property. He also sought a permanent injunction against Waldridge to ensure his (Gordon's) continued access to a private roadway to access the property and to prevent Waldridge from severing the water line. In his answer to the complaint, Waldridge asserted that "[t]he agreement between the parties was not in writing and the specific terms of the agreement are in dispute and may be in violation of the Statute of Frauds." Answer to Complaint. ROA at 9. However, Waldridge admitted that Gordon "is entitled to a deed[.]" *Id.*

Thereafter, on October 25, 2023, Gordon sought leave to file an amended complaint. In that pleading, Gordon asserted that completion of the contract is legally impossible because the Washington County Planning and Zoning Commission would not grant a waiver from regulations requiring that certain rural properties have frontage on a public road or contain at least 15 acres. Consequently, Gordon requested recovery of the full amount he paid to Waldridge

-4-

under the oral agreement. The Trial Court granted Gordon leave to file the amended complaint on October 25, 2023. In the same order, the Trial Court granted Gordon's prior request for a temporary injunction.

Shortly thereafter, on November 22, 2023, Waldridge filed a motion to file a counterclaim. Waldridge's counterclaim asserted that his "causes of action are based upon right of set-off, unjust enrichment, mistake, misrepresentation, statute of frauds, real estate and contract law, and the doctrine of Caveat Emptor."[1] Defendant's Counterclaim, ROA at 22. While the counterclaim asserted that Waldridge had been unable to rent the property during the period of occupancy, he did not request damages. Instead, Waldridge requested dismissal of the Complaint, reformation of the oral agreement to a lease, and restoration of the property.

With respect to the reformation claim, Paragraph 8 of Waldridge's Counterclaim reads, "[t]he amount paid by Plaintiff to Counterclaimant should be considered rent for the occupancy of the land for that period of time." *Id.* at 23. Item 2 of his Demand section requests, "[r]eformation of the oral agreement to a lease[.]" *Id.* Because Waldridge did not develop this claim later in the proceedings, we do not know whether Waldridge meant to request reforming the

---

[1] From the imprecise phrasing of Waldridge's counterclaim, it is not clear whether these claims were asserted as defenses to Gordon's amended complaint or as separate causes of action.

sale of only the mobile home, only the real property, or both. The record was not developed on that important question.

The Trial Court granted Waldridge leave to file the counterclaim the same day that he filed the motion, November 22, 2023. In the same order, the Trial Court also scheduled the matter for a bench trial on January 19, 2024. But on that date, the Trial Court cancelled the bench trial, directing as follows:

> Parties will submit agreed factual stipulations and submit memoranda of law by February 16, 2024. Court will enter written decision within 14 days thereafter.

Calendar Order, January 19, 2022. ROA at 26.

It remains unclear whether the Trial Court and parties believed that some sort of trial actually occurred without the taking of evidence. Further compounding this irregular procedural posture, no one appears to have discussed the issues of summary judgment or directed verdict. Apparently, no arguments of any kind were made, and no objections were lodged. The Trial Court was to make its decision alone, based solely on the paperwork submitted.

On February 8, 2024, the parties submitted the joint stipulations of fact *supra*. In his "Trial Brief," filed February 13, 2024, Gordon sought reimbursement claiming that both parties were under the mistaken beliefs – apparently of law and fact – that the one-acre tract could be conveyed. Thus, Gordon asserted that the legal doctrine of mutual mistake allowed him to recover

-6-

the amounts that he had paid.  Gordon also argued that the doctrine of unjust enrichment allows him to rescind the sale contract and recover the money he paid to Waldridge.  In addition to restitution, Gordon asked the Trial Court to make the temporary injunction permanent, allowing him to remain on the property and to prevent Waldridge from blocking his access to the private road and severing the water line.

In his responsive "Trial Memorandum," filed two days later, on February 15, 2024, Waldridge argued that the parties' mistake of law – and apparently not of fact – was not grounds for rescission of the contract or restitution. Waldridge also maintained that Gordon had a duty to determine whether the property could be conveyed in advance of entering into an alleged oral contract for the sale of land.  Thus, absent a claim of fraud or misrepresentation, Waldridge argued that the transaction was subject to the rule of *caveat emptor*, affording no ground whatsoever to Gordon for relief.  Waldridge also noted that Gordon received some benefit of the bargain by living on the property for nearly 24 years. Waldridge requested that the Trial Court find the oral contract unenforceable and reject Gordon's claims for rescission and restitution for mutual mistake or unjust enrichment.  However, Waldridge also requested that the Trial Court provide "[a] resolution that would grant [Gordon] a life interest in the continued occupation of

the property without fear of eviction." Defendant's Trial Memorandum. ROA at 41. The record is silent as to a mechanism for effecting this latter suggestion.

Four days later, on February 19, 2024, the Trial Court rendered "Findings of Fact, Conclusions of Law, and Order" as would be done following a bench trial.[2] First, the Trial Court found no allegation of fraud, undue influence, or abuse of confidence that would justify denying Gordon's request for relief based on mistake of law. Second, the Trial Court found that Gordon established grounds for relief based on mutual mistake of fact but had not clearly shown that he was entitled to the remedy of restitution under that theory. Third, the Trial Court listed the elements of unjust enrichment, but did not separately analyze each of these elements as they might have applied to Gordon's claim.

Rather, the Trial Court provided equitable summations and determinations without a detailed analysis on the issues as follows:

> The Court concludes that if either party has been harmed by the failure of the Planning and Zoning Commission to approve the conveyance it is the Defendant [Waldridge]. The Plaintiff [Gordon] essentially leased this property for fifteen years in the approximate monthly amount of $144.00 and has paid nothing to reside on the property for over eight years. It is not the Defendant's fault that Planning and Zoning failed to approve the agreement reached by the parties. As noted in the Defendant's memorandum, the Plaintiff as the buyer had the burden

---

[2] Although the Trial Court adopted the parties' stipulations of fact, the Trial Court did not request or adopt any tendered findings of fact, conclusions of law, or judgment.

of ensuring all legal requirements were met prior to entering into this transaction. It is impossible for the parties to execute the deed agreed upon. To require the Defendant to reimburse the Plaintiff $26,000.00 would be unreasonable and inequitable. Instead, the Court concludes the equitable remedy is for the Plaintiff to receive title and possession of the manufactured home.

Findings of Fact, Conclusions of Law, and Order, February 19, 2024. ROA at 57. The Trial Court then ordered as follows: (1) Gordon's request for monetary damages and injunctive relief allowing him to reside on the property in question is denied; (2) "The oral contract between the parties concerning the one acre lot . . . is hereby RESCINDED"; and (3) "The Plaintiff shall receive title to the manufactured home. The Plaintiff shall have sixty (60) days to remove said home from the Defendant's property." *Id.* ROA at 63.

Gordon now appeals from this order. Additional facts will be set forth below as necessary.

As an initial matter, and as stated at the outset, the unusual procedural practice of this case before the Trial Court creates significant difficulties for our review. As noted above, the Trial Court cancelled the scheduled bench trial but also directed the parties to submit the case on stipulations of fact and written "trial" memoranda of counsel. The record does not indicate the manner by which the Trial Court came to this arrangement or the extent to which the parties agreed to it.

-9-

As such, it is not clear to this Court whether the matter was submitted to the Trial Court on what could properly be called a bench trial, a summary judgment, or a judgment on the pleadings, without any argument whatsoever. Any directed verdict process is absent. Consequently, we are not clear what the appropriate standard of review should be. Ordinarily, where the facts are not in dispute, we review the Trial Court's conclusions of law *de novo. Aubrey v. Office of Att'y Gen.*, 994 S.W.2d 516, 519 (Ky. App. 1998). However, we review the Trial Court's decision to afford an equitable remedy under the abuse of discretion standard. *Western Cas. & Sur. Co. v. Meyer*, 301 Ky. 487, 493, 192 S.W.2d 388, 391 (1946). We are not sure what standard to apply to the creature here.

Complicating matters further, the Trial Court did not address several of the more significant legal issues raised, such as the Statute of Frauds, which Waldridge had specifically pleaded in his pre-trial filings. And, the Trial Court only summarily addressed the issues of mistake and unjust enrichment. Without having adequate bases for rulings, our ability to review decisions is improperly constrained.

Most significantly, the Statute of Frauds requires all contracts conveying or transferring an interest in real property to be in writing, signed by the parties to be bound, and contain a sufficient description of the real property affected. Kentucky Revised Statute ("KRS") 371.010(6). Waldridge pleaded the

-10-

Statute of Frauds as a defense in both his Answer and Counterclaim. *See* Kentucky Rule of Civil Procedure ("CR") 8.03. He also mentioned the Statute of Frauds in the conclusion to his "Trial Memorandum." Thus, there is no showing in the record that this issue was waived. Nevertheless, the Trial Court did not mention that the Statute of Frauds would ordinarily preclude any relief here, and neither party raises the issue on appeal. The issue is clearly significant to the underlying claim, and it must be addressed by the Trial Court.

When doing so, the Trial Court must consider and make rulings as to whether circumstances exist warranting a finding that the Statute of Frauds is inapplicable. By way of example, the general rule is that completed performance by one party removes an oral agreement from the Statute of Frauds. *Sawyer v. Mills*, 295 S.W.3d 79, 86 (Ky. 2009). "[A] contract is no longer executory, and [the Statute of Frauds] has no application thereto, where it has been fully performed upon one side and the other party by its terms has a longer time than one year in which to perform his part thereof." *Pilcher v. Stadler*, 276 Ky. 450, 124 S.W.2d 475, 479 (1939).

Furthermore, we note that Gordon no longer seeks enforcement of the oral contract for the sale of the realty. Rather, he only requests the equitable remedy of rescission with restitution. The Kentucky Supreme Court has recently held that a *quantum meruit* claim arising from such an oral contract can be

-11-

permitted where the buyer has fully performed his obligations, and restitution would not otherwise defeat the purpose of the Statute of Frauds. *Normandy Farm, LLC v. Kenneth McPeek Racing Stable, Inc.*, 701 S.W.3d 129, 146 (Ky. 2024).

Whether the Statute of Frauds would control to bar the alleged oral agreement to sell the real estate or whether these two examples, or others, of exceptions would apply is a finding for the Trial Court to make after a hearing coupled with proof. It is not within our purview on appeal to make these legal determinations for the first time. But we note the conspicuous absence of the mention of the Statute of Frauds in the record below. And rulings on this looming issue may be dispositive.

Additionally, manufactured homes placed upon real property are generally considered personal property, not real property. *Bowling v. Appalachian Fed. Credit Union*, 515 S.W.3d 686, 688 (Ky. App. 2017) (citing *Citizens Nat'l Bank v. Washington Mut. Bank*, 309 S.W.3d 792 (Ky. App. 2010)). However, when a manufactured home is permanently affixed to real estate, it may properly be considered as real property. This analysis is one to be undertaken at the Trial Court level, and it requires the filing of an affidavit of conversion and surrender of the separate certificate of title. KRS 186A.297. *See also Wright v. Miller*, 629 S.W.3d 813, 817-18 (Ky. App. 2021). The Trial Court required Gordon to move the mobile home, but the parties agreed that it cannot be moved. Thus, the Trial

Court must take proof on this issue and make findings before requiring a potential impossibility to occur.

Besides the unequivocal issues that remain concerning the Statute of Frauds, the Trial Court's other findings and conclusions concerning equitable relief were inadequate and not supported by the record. The parties and the Trial Court have used the terms "rescission" and "reformation" interchangeably, without distinguishing between the nature of these separate, legal or equitable remedies. Turning first to rescission, the Trial Court summarily declared the oral contract to be rescinded. However, rescission of an executed contract is not ordinarily allowed for a breach unless the former status of the parties can be restored. *Beattie v. Friddle*, 229 Ky. 361, 17 S.W.2d 246, 248 (1929). A return to the former status quo does not appear to be possible here, and the Trial Court's ruling does not restore any balance.

Moreover, it is well-established that a party may only seek rescission of a contract based upon mutual mistake of fact. *Chase v. Weinberg*, 249 Ky. 518, 60 S.W.2d 1000, 1002 (1933). Absent a claim of fraud, misrepresentation, or undue influence, a mistake of law is not grounds for rescission and recovery of consideration paid. *Id.* at 1002-03. *See also Sadler v. Carpenter*, 251 S.W.2d 840, 842-43 (Ky. 1952). Gordon does not claim that Waldridge misrepresented any

material fact about the property to be conveyed. And, under the stipulated facts, the parties' mistake of law was not grounds for rescission or restitution.

The Trial Court did not make a finding whether the mistake was fact or law, and yet it declared the contract rescinded. Gordon alleges only that both parties were unaware of the regulation prohibiting the transfer of certain rural properties unless they have frontage on a public road or contain at least 15 acres. The parties' "mistake must be one as to a material fact affecting the agreement and not one of law, which is 'an erroneous conclusion respecting the legal effect of known facts.'" *Abney v. Nationwide Mutual Insurance Co.*, 215 S.W.3d 699, 704 (Ky. 2006) (quoting *Sadler*, 251 S.W.2d at 842). The Trial Court's findings treated the alleged error as mistake of fact but failed to determine whether it actually amounted to one. This absent finding is critical to any analysis on this Court's part.

Furthermore, by the time the matter was submitted to the Trial Court, Gordon apparently only sought rescission of the oral contract and restitution of the amounts paid. In arguing against this remedy, Waldridge relied heavily on the rule of *caveat emptor*, ("let the buyer beware"), which provides:

> that the buyer must not trust blindly that he will get value
> for his money, but must take care to examine and
> ascertain the kind and quality of the article he is
> purchasing, or, if he is unable to examine it fully or
> intelligently, or lacks the knowledge to judge accurately

> of its quality or value, to protect himself against possible
> loss by requiring an express warranty from the seller.

*Manning v. Lewis*, 400 S.W.3d 737, 741-42 (Ky. 2013) (quoting *McClurkin v. DeGaigney*, 251 S.W. 617, 619 (Ky. 1923)).

Under this rule, Waldridge contends that Gordon, as the buyer, had the obligation to determine for himself whether the real property could be conveyed as agreed. However, this analysis typically applies to visible – and factual – defects of the premises. *Fannon v. Carden*, 240 S.W.2d 101, 103 (Ky. 1951). Likewise, the rule does not preclude restitution of amounts paid where legal defects preclude the conveyance of title. *See Massey v. Fischer*, 245 S.W.2d 594, 596 (Ky. 1952).

Here, in addition to failing to delineate whether the parties' mutual mistake was factual or legal, the Trial Court also neglected to address whether the doctrine of *caveat emptor* was applicable. Nevertheless, the Trial Court declared by assumption that Gordon had the obligation to determine whether the one-acre tract could be legally conveyed under the Washington County Planning and Zoning Regulations. We find no basis in the record, stipulated facts, or controlling legal authority to support this conclusion.[3] And, as noted above, the doctrine of *caveat*

---

[3] Indeed, the parties do not even address whether this regulation was in effect when they entered into their oral contract.

*emptor* does not preclude restitution where the buyer has already performed all of his obligations but the seller cannot convey title to the property, as is the case here. Without sufficient findings or analysis on this question, we cannot provide meaningful appellate review of the Trial Court's attempt at an equitable remedy.

Regarding the equitable ground of reformation, as opposed to rescission, the Trial Court correctly noted that a written contract may be reformed upon the grounds of mutual mistake of fact. *Nichols v. Zurich Am. Ins. Co.*, 423 S.W.3d 698, 702 (Ky. 2014). The proponent of the reformation must satisfy three elements: "First, it must show that the mistake was mutual, not unilateral. Second, '[t]he mutual mistake must be proven beyond a reasonable controversy by clear and convincing evidence.' Third, 'it must be shown that the parties had actually agreed upon terms different from those expressed in the written instrument.'" *Id.* at 703 (quoting *Abney*, 215 S.W.3d at 704 and *Campbellsville Lumber Co. v. Winfrey*, 303 S.W.2d 284, 286 (Ky. 1957)). Clearly, this matter does not involve a *written* contract. And as previously noted, the Trial Court never determined whether the parties' mistake involved a matter of fact regarding the contract or the legal effect of their contract.

In his Counterclaim, Waldridge requested, among other things, "[r]eformation of the oral agreement to a lease." However, he did not mention this request either in his Trial Memorandum or in his brief on appeal. In undisputed

-16-

fact, both parties treated this case as a sale, which was the agreement. And the parties completed all terms of the sale that were within their control. Nevertheless, the Trial Court essentially re-wrote, or reformed, the contract of sale into an oral lease, which neither party intended nor agreed. Furthermore, reforming the sale of real property into a lease also runs afoul of the Statute of Frauds, which requires any lease for longer than one year to be in writing. KRS 371.010(6). And again, the Trial Court provided no ruling on the applicability or lack thereof as to the Statute of Frauds. Therefore, its ruling cannot withstand any standard of review.

This leaves Gordon's remaining claim that he was entitled to restitution under the theory of unjust enrichment. For a party to prevail under that theory, he must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value. *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009). But as noted above, the Trial Court did not directly address these elements. And the Trial Court's findings only indirectly addressed the equities of the respective parties, and it did so without undertaking that requisite analysis.

We find no support for the Trial Court's finding that only Waldridge suffered harm when the conveyance of the land was not approved. We agree that the Trial Court had broad discretion to fashion the most-appropriate equitable

remedy. However, the Trial Court's direction that Gordon should receive title to and possession of the mobile home provides Gordon with no meaningful relief. Gordon lived in the mobile home on the property for nearly 24 years, including the approximate nine years after he completed all of the agreed-upon payments. To that extent, he received some benefit from the arrangement.

But he paid the full contract price for the mobile home AND the land. The Trial Court's ruling deprives Gordon of any equity in the real property that he paid to own. Instead, the Trial Court ordered Gordon to vacate the real estate within 60 days. Thus, Gordon has no right to remain on the property. Given the age and condition of the mobile home, as Waldridge admits, it cannot be moved without being damaged. At best, the Trial Court's remedy will lead to an eviction action – if not abandonment – and Gordon's ultimate loss of his entire, paid-in-full investment.

Meanwhile, and on the other hand, Waldridge will benefit from receiving the entire amount for the purchase under the unenforceable, but agreed, contract terms. And yet, he will still retain the land. If he commences an eviction, Waldridge will likely keep the immovable "mobile" home as well. Thus, under the Trial Court's ruling, Gordon will have paid $26,000.00 for a sale that never occurred, and Waldridge will keep the land, the mobile home, and the money.

There simply must be some proper legal procedures followed and findings made to support such an outcome. The informal manner in which this case proceeded has birthed an outcome no one envisioned. Under these circumstances, this matter must be remanded for additional proceedings.

We appreciate that the parties and the Trial Court may have wanted to create a simplified process to adjudicate this claim, avoiding the time and expense of a trial. However, one seeking redress in the court system must follow its established rules and long-standing, legal precedent. No one is entitled to create an amorphous process outside normal practice and Rules of Civil Procedure. On remand, the Trial Court must create a sufficient record and conduct the proceedings in a manner within those parameters and that allows meaningful review of the bases for the decisions.

Likewise, the Trial Court must first determine whether it is conducting a trial or a dispositive motion practice. It must then issue rulings on all controlling legal and equitable issues. Most significantly, the Trial Court must address whether the Statute of Frauds applies or permits the relief that Gordon seeks in this case. For the Statute of Frauds applies not only to a sale of real estate, but also to its lease for more than one year. Additionally, the Trial Court must address the status of the mobile home. If, as both parties seem to agree, the mobile home cannot be moved, then the Trial Court must determine whether it is affixed,

thereby implicating the Statute of Frauds for its sale or lease. *Bowling*, 515 S.W.3d at 688-89. *See also Wright*, 629 S.W.3d at 817-18.

If the Statute of Frauds applies, then the Trial Court must fully address the equitable grounds for rescission, reformation, and/or restitution. As an initial determination, the Trial Court must determine whether the parties' mistake was one of fact supporting relief under either rescission or reformation. The Trial Court must also make findings whether Gordon has satisfied the elements of his claim for relief based on unjust enrichment. If he has, then the Trial Court must balance the equities among the parties. This balancing includes a determination of which party had the obligation to ensure that title could be conveyed, the extent of each party's performance of his obligations under the agreement, and the extent of the benefit each party received up to the point that he discovered the contract could not be performed in the manner intended. Based on these rulings, the Trial Court shall enter a new judgment affording any appropriate relief.

Accordingly, we reverse the Order of the Washington Circuit Court and remand for additional proceedings as set forth above.

ALL CONCUR.

BRIEF FOR APPELLANT:

Daniel Carroll Kelly
Springfield, Kentucky

BRIEF FOR APPELLEE:

E. Gregory Goatley
Springfield, Kentucky

-20-