### Bartley, et al. v. Knott, et al.

(Decided October 14, 1910.)

Appeal from Nelson Circuit Court.

1.  Deed by Husband to Wife—Duress of Wife—Effort to Reform Deed.—Held that the contention in this case that Dan Knott was compelled by the duress of his wife to execute the deed to her is not proved,—that Knott did not attempt to avoid the deed he made to his wife, in toto, by reason of his feeble condition, but only sought to reform it so that it would only include two tracts.

2.  Conveyances—Liens—Substitution.—That the conveyance by Dan Knott to his wife passed all the right and title he had in the property therein named, to her subject to his marital rights, which included the tract that Mrs. Watson and William Ebney now hold by conveyance from Metcalfe subject to the lien of Metcalfe for the unpaid purchase price, and as Mrs. Watson and William Ebney have paid that to Metcalfe, they are entitled to be substituted to the lien for $40, the amount they paid Metcalfe, and its interest.

C. T. ATKINSON, NAT W. HALSTEAD and J. SMITH BARLOW for appellants.

W. E. SETTLE, JR., Guard Ad Litem, JOHN S. KELLY, JOHN A. FULTON and GEO. S. FULTON for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellee Dan Knott and his wife, Emily Knott, now deceased, in the year 1905, resided in that part of Nelson county known as the "knobs." Dan Knott was the owner of and in possession of about 380 acres of land upon which they resided. On the 29th day of September, 1902, he conveyed this land to his wife for the recited consideration of $19.97, cash in hand paid, "and for the further good, valuable and sufficient consideration, acknowl-

edged to have been paid to and received by the first party.'' Emily Knott, to whom the conveyance was made, died in the year 1903 without ever having a child born to her. Dan Knott has resided upon the land since her death. This action was instituted in October, 1905, by the brothers and sisters and descendants of brothers and sisters of Emily Knott, her alleged only heirs, her mother and father having died before she did. It was alleged that this 380 acres of land was worth less than $1,000 and that Dan Knott was entitled to reside upon it as a homestead so long as he lived; but it was charged that he was selling and disposing of the timber growing upon the land, in large quantities; that the land was chiefly valuable for its timber and that he was doing great damage to it, and asked that he be restrained from thus destroying the timber. Dan Knott answered and admitted the execution and delivery of the deed, but alledged that for a long time anterior thereto and for many months thereafter, he was in an infirm, feeble and weak condition both physically and mentally, as a result of disease; that his mental condition at said time was such as to render him wholly unfit to transact business of any character, and especially of making the conveyance referred to, and that the conveyance was made for a wholly inadequate consideration. He further alleged that ''it was not his purpose, intention or design, nor was it the agreement, understanding or intention of either of the parties, grantor or grantee to said deed, or this defendant by such conveyance, to convey or mean to convey, or claim to convey, or claim to purchase any more of the lands described in the deed, or intended to be described than such as he then had the legal title by deed; that it was not contemplated, intended, purported or meant to be conveyed therein, or that he was conveying any lands in Nelson county, Kentucky, or elsewhere, in which he had only the equitable title, or to which he had no deed, but that said latter mentioned lands were by the agreement, contract and understanding mutually understood to be reserved and excepted from such conveyances.'' He then alleged that the 380 acres consisted of six separate purchases or small surveys. Two of these surveys together consisted of about 170 acres, and were conveyed to him by deed, and were intended to be included in the conveyance to his wife. He claimed to own two of the other small surveys

by purchase but had no deed to them. He alleged that the other two surveys were not owned by him; that one of them, about thirty acres, belonged to the Wilson heirs, and that the other belonged to his co-appellees, Marie Watson and William Ebney. He prayed in his answer that the deed be cancelled and reformed so as not to include the last described four small surveys. The issues were completed, the evidence heard, and the court adjudged that the deed be cancelled in its entirety, and that the petition of appellants' be dismissed. The court did not even adjudge appellants the 170 acres to which he had title by conveyance, although the answer admitted that they were entitled to it, subject to Dan Knott's homestead right.

There were many witnesses introduced, but not one of them stated that there was any mistake made in the preparation of the deed in giving the boundary of the land, except Dan Knott, and his evidence was wholly incompetent. This settles the case under the issues formed by the pleadings. Dan Knott only alleged his mental and feeble condition at the time of the execution of the conveyance as a cause for not discovering the mistake in the boundary. There was much testimony introduced as to his physical and mental condition immediately before and at the time the conveyance was executed. All agree that he was very feeble in body, but many said his mental condition was good and many that it was bad. A few testified that his wife controlled him in business matters. The contention that Dan Knott was compelled by the duress of his wife to execute the deed is not proved. The testimony shows that she was not present when the deed was executed at the county site. The officer who took his acknowledgment to the conveyance, stated that the old gentlemen appeared to be feeble, but that he could see nothing wrong with his mental condition. The claim of duress on the part of the wife was not made in the pleadings, nor did Knott attempt to avoid the deed in toto by reason of his feeble condition. He only sought to reform the deed so that it would include only the two tracts referred to. Three of the small surveys of the land which he asked to be excluded from the conveyance to his wife, were owned and possessed by Dan Knott for more than thirty years, and no one was claiming any part of either tract. It appears, however, that he had never obtained a title to them by conveyance, but, under the proof, his title to them by pur-

chase and possession, was equal to one by conveyance. Dan Knott purchased the fourth small tract more than twenty years before his wife's death, paid a part of the purchase price; but his vendor had to sell it for the remainder. One Metcalfe bought it at the sale under a previous understanding with Knott that he would have the right to redeem it. Knott did undertake to redeem the land and paid about $30 on it, but after his wife died, it seems that he concluded not to pay the balance, $40, and suggested to Mrs. Watson and William Ebney that they pay it, which they did, and Metcalfe and wife made them a deed for the land.

It is our opinion that the conveyance by Dan Knott to his wife passed all the right and title he had in the property to her, subject to his marital rights, which included the tract that Mrs. Watson and William Ebney now hold by conveyance from Metcalfe, subject to the lien of Metcalfe for the unpaid purchase money, and as Mrs. Watson and William Ebney have paid that to Metcalfe, they are entitled to be substituted to the lien for $40, the amount they paid Metcalfe, and its interest.

It is reasonable to infer from all the facts in the record, that at the time of the conveyance by Knott to his wife and for some time prior thereto; he was physically very weak and they thought he would die first; that his intention in executing the deed was to provide for his wife's support after his death. He was mistaken in this conclusion, however, as she died first, but this court has no power to correct this character of mistake.

For these reasons, the lower court erred in dismissing appellants' action, and the judgment is reversed.