# Men About Town, Inc., v. Budde et al.

## Nov. 27, 1942.

Carroll, McElwain & Ballantine for appellant.

Ogden, Galphin, Tarrant & Street and Lawrence S. Grauman for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Prior to the year 1937 (the record not disclosing when) the then owners of an area of land within the corporate limits of the city of Louisille, Kentucky, subdivided it into lots with the restriction that they should be occupied for residence purposes only, except if not so occupied, they might be devoted to agricultural purposes by the owners. The plat of the subdivision containing such restriction was acknowledged and recorded in the office of the county court clerk of the county. Thereafter, all deeds to any of the lots contained the same restriction—they also being recorded in the same office. The area of the subdivision was designated by those who made it as "Transylvania Subdivision." Some time in the summer of 1937, some young men of the city concluded to form themselves into a social club and to acquire property for a club house. The idea finally culminated in the formation of a club for that purpose and

the originators of the scheme adopted the corporate name of "Men About Town Club" and it was incorporated as such some time before August, 1938. But before the incorporation was effected, the incorporators, through a committee appointed for that purpose, inspected various premises as a proper site for the home of the club. The location of Transylvania Subdivision was in the eastern part of the city and bounded by the Ohio river. Lots numbers 8, 9, and one-half of number 10, were equitably owned by the appellee, E. G. Budde, but at the time of the transaction here involved, the legal title thereto had been placed by Budde in B. A. Fueglein and wife, who appear to have owned no beneficial interest in the lots and title thereto was held by them as mere naked trustees, the equitable title, as we have said, being owned by the appellee, Budde. The committee of the contemplated club had their attention directed to Budde's equitably owned property in Transylvania Subdivision upon which there was a residence building which had been erected by past owners, or by him after he acquired title thereto (the record not disclosing) and which he used as a summer home. It was likewise capable of housing a club such as was later organized. The committee so appointed was favorably impressed with the availability of Budde's equitably owned property in the subdivision referred to and began to negotiate with him to purchase it for the purpose indicated. The committee, as well as other contemplated organizers, were soon made aware of the restriction, supra, and since the property was not contemplated to be used for either, residence purposes or agricultural purposes, the question arose as to whether it could be used as a home for social club purposes. The representatives of the contemplated club did not consult an attorney and they, therefore, received no legal advice on the question so raised. They did, however, consult a banker, but he was not prepared and did not advise them further than to again draw their attention to the restriction. During the progress of the negotiations (all of which was with Budde) he volunteered to consult with some of the owners of lots located within the subdivision—who in the meantime had adopted the name of "Transylvania Beach Association"—the members of which were assessed and paid periodical dues to create a fund for beautifying and perpetuating it throughout the subdivision. He consulted with a few members of the Beach Association who ex-

pressed gratification of having the contemplated club members as neighbors; but the record does not expressly disclose that the subject of waiver of the restriction was ever discussed. Budde reported back to the representatives of the contemplated club the information that he had received, and also that another club, known as the "XX" Club was installed on a part of the subdivision (but it is not shown for how long prior thereto) and that he was convinced that no members of the Beach Association would insist on the application of the restriction as against the contemplated club of "Men About Town." Time consumed in such matters extended up to April 1938, when a parol agreement was reached and terms agreed upon for the purchase of Budde's property for club purposes, but no deed was executed for the contemplated site of the clubhouse until August 1938. It was executed by the legal title holders supra with, of course, Budde's consent. However, at that time, all of the interested parties knew of the restriction and there was no mistake by any of them as to the facts. Just before or just after the execution of the deed the club, or some of its members, received a letter from a member of the Beach Association protesting against the use of any of the lots for club purposes which was written in reliance upon the restriction referred to,

This action was later filed in the Jefferson circuit court by a number of members of the Beach Association (owners of lots in the subdivision) against the incorporated club to enjoin it from occupying the property purchased by it for club purposes or for any other purpose than as a residence or for agricultural use. Budde was not made a party to the litigation by the original petition; however, defendant and appellant here by its answer brought him into the case by making their answer a cross-petition against him, in which they sought to cancel the deed conveying the property to it upon the ground of mutual mistake of the parties thereto, as to whether the restriction had been waived by the lot owners of the subdivision, or would not be insisted on by them. The prayer of the cross-petition against Budde asked that the status quo be restored as between him and defendant, which, of course, involves the repayment of the consideration he had received and the cancellation of notes for deferred payments, some of which were past due. The terms of the conveyance contained a precipitation clause whereby all future deferred payments

might be declared due and enforced at the option of the holder thereof. Budde's answer to that cross-petition was a denial of the material averments thereof and he sought the collection of all deferred payments which were secured by a lien on the property conveyed.

Following pleadings made the issues (there being no objection to the cross-petition whereby Budde was brought into the litigation) and proof was taken, and on submission of the case, the court permanently enjoined defendant from using the property for club purposes and dismissed the prayer of the cross-answer against Budde for rescission and gave him judgment for the balance of all deferred payments and ordered the property sold to satisfy it. From that judgment this appeal is prosecuted by defendants.

It is agreed by both parties in their briefs that the court properly granted the permanent injunction sought by the original plaintiffs in reliance upon the case of Chase v. Weinberg, 249 Ky. 518, 60 S. W. (2d) 1000, and authorities therein cited, and no question therefore is made on this appeal against that portion of the judgment. But appellant vigorously contends that the court erred in not canceling and rescinding the conveyance and in rendering judgment against it in favor of Budde for the balance of the deferred payments for the property as prayed for by him in his answer to the cross-petition against him.

Since all the parties knew all the facts before the contract of purchase was agreed to, it necessarily follows that the only mutual mistake that defendant could rely on would be one of law and not of fact but, since the Chase case (identical in facts as we construe it) held that a mistake of law in such circumstances would not furnish grounds for an equitable rescission of the contract, defendant sought to obtain such relief because of the alleged guarantee and warranty made by Budde to representatives of defendant during the negotiations for the purchase of the property. In the meantime—as alleged—he represented (as stated in defendant's cross-petition against him) "That he had communicated with the members of the Transylvania Beach Association and had been assured that no objection *would* be made to the use of the property as a club by defendant; that the restriction *would* be waived and no question *would* ever be raised or effort made to enforce said restriction against

defendant.'' (Our emphasis). That excerpt from defendant's cross-petition contained in its answer is the only alleged ground for rescission relief and the representations, so allegedly made were at a time considerably prior to the date of the execution of the deed. Therefore, if it should be held that the ground relied on for such relief amounted to a warranty or guarantee that no such objection *would* be made by any member of the Transylvania Beach Association, or that the restriction would thereafter be waived by such other owners of lots in the subdivision, the defendant is met with the fact that the later executed deed contained no such warranty or guarantee, but on the contrary expressly stated that the property could not be used for purposes other than residential or agricultural purpose and which was tantamount to a withdrawal of any such representations, warranty or guarantee theretofore verbally made by the cross-defendant Budde. However, he denied any such alleged assurances on his part and testified that he reported to defendant only as hereinbefore set out, although two or three members of the defendant club endeavored to testify to the contrary. Defendant's witnesses on that issue were C. B. Mirus, Horrell Hammon, William H. Carey, C. B. Stern and T. C. Schreiber, all members of the club. Mirus said that Budde ''Assured us that he had spoken with the members of the Beach Association and assured us that we would have no trouble whatever with the property restriction.'' Hammon stated that ''Mr. Budde gave the committee the assurance that he had spoken to the Beach Association committee and that he had had permission to sell the property to us for club purposes.'' Carey said that ''Mr. Budde stated that he had discussed the matter with members of the Beach Association (stating the names of only two members thereof) and he definitely assured us that if we bought the property the restriction definitely would not be enforced against us.'' The testimony of Stern and Schreiber is to the same effect, from which it would appear that Budde informed the committee of defendant nothing more than that the members of the Transylvania Beach Association with whom he consulted, only expressed a willingness on their part for the club to occupy the purchased premises for such purposes and that such consulted members themselves would not attempt to interfere therewith, or to enforce the restriction against such occupancy. However, it was

known that there was a considerable number of other owners of lots in the subdivision who were not consulted, and, who, of course, would not be bound by any conclusion or determination on the part of the members of the association who were also owners in the subdivision. All of which is rehearsed by us in determining the alleged effect of Budde's report to the committee, even if it was not merged in the later executed deed, which, as we have seen, expressly contained the involved restriction.

Perhaps, if appellant and defendant had relied on "fraudulent representations," whereby deceit was practiced on it by Budde, and which induced it to make the purchase and which it would not otherwise have done, rescission or cancellation on proper terms might be granted. But nowhere in any of defendant's pleadings is there any claim of any *fraudulent* action or representation of any character on the part of Budde which induced it to make the purchase of the property which it otherwise would not have done. On the contrary the pleading stated that both defendant and Budde were *mutually* mistaken, but which, we have seen, was only a mistake—not of facts—but as to the law applicable thereto, and which, under the Chase opinion, would not furnish grounds for cancellation which was the relief sought in that case. Moreover the contention herein made is necessarily based upon the theory that Budde's representations—made before the execution of the conveyance—were broad enough to create defendant's interpretation as to their effect.

No testimony was heard as to the character of Budde's alleged representations with respect to *waiver* of the restriction by other lot owners in the subdivision, even if the broad warranty effect insisted on by defendant could be given them, and there was no other obstruction to their enforcement by way of cancellation or rescission, then his representations—as furnishing the sole grounds invoked by defendant in its cross-petition against Budde—consisted of *future* actions on the part of other lot owners in the subdivision and it is shown in Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 3, Section 854; in Black on Rescission and Cancellation, (2d) Ed., Vol. 1, Section 146, and in Bartley v. Knott, 140 Ky. 288, 130 S. W. 1096, that such representations as to future conduct and acts of others or future happenings or

400

events and following consequences, furnishes no grounds for the character of relief sought by defendant in this case.

Wherefore, the judgment appealed from in its entirety is affirmed.